Opinion delivered June 2, 1886.

[No. 5006.]

George Wyers v. The State.

1. Practice.—Transcript showing, in the caption of the case, that the judge who tried the case presided by exchange with the regular judge of the district, sufficiently shows the lawful authority of the judge who presided, to hear and determine the cause. Entry of a formal order declaring the exchange of districts was not necessary.

2. THEFT—EVIDENCE—MARKS AND BRANDS—CHARGE OF THE COURT.—
   In a trial for cattle theft, the defense requested the court to charge the
   jury as follows: "An unrecorded brand is no evidence of ownership, and
   as the brand of S. B. Bryan has not been recorded, it will be no evidence
   of ownership in Bryan to the steer in controversy; and unless such steer
   has been proved by other evidence, beyond a reasonable doubt, to be the
   property of Bryan, you will acquit" *Held*, that, as the requested charge
   stated correctly the law of the question, and as it was demanded by the
   evidence adduced on the trial, its refusal was error.

APPEAL from the District Court of Falls. Tried below before the Hon. Anson Rainey.

The conviction was for the theft of a steer, the property of S. B. Bryan, in Falls county, Texas, on the twenty-fourth day of June, 1881. A term of five years in the penitentiary was penalty imposed by the verdict.

S. B. Bryan, the first witness for the State, testified that in March and April, 1881, he lived on Brushy creek, in Falls county, Texas, about ten miles north east from the town of Marlin. At that time witness owned five or six head of cattle, including the animal described in the indictment, which was a steer two years old, white in color save some specks or spots on the head and neck, and black ears. He was in witness's brand, BY on left hip, and in his mark, a crop off the left ear. Witness's brand had never been recorded. That animal disappeared late in March or early in April, 1881, and had never been seen by witness since. No one had the witness's consent to take it. Defendant lived about four miles from the witness's house.

Cross-examined, witness said that, acting upon information derived from Joe Smith, he went to the town of Marlin, in 1881, and examined the books of the cattle and hide inspector of Falls county, with the view of ascertaining the marks and brands of certain animals recorded therein as sold by the defendant to H. Rinkelman. He found no record of an animal suiting the one he lost as to age and brand, but found the record of one suiting his in color. He ascertained then that Rinkelman had already shipped to Chicago the cattle he had bought from the defendant.

Joe Smith testified, for the State, that he knew the witness Bryan, who lived within two miles of his house in 1881, and also the defendant, who then lived within the same distance. Witness did not know Bryan's mark and brand in March or April, 1881, but was subsequently apprised of them. Witness and other

parties made a neighborhood collection of cattle in the spring of 1881. The herd gathered included an animal suiting the description given by Bryan of the animal he subsequently lost. Defendant and Rinkelman's hands and others had charge of that neighborhood herd when the witness left it. The BY brand on the white steer had not then been run over. Late in June, 1881, the witness saw the same animal in a herd of cattle on Cottonwood creek, which herd was then in the possession of Joe Wyers, the defendant's brother, and other parties. The brand, WEBB, the two first letters connected, which was one of the defendant's brands, had then but recently been run on the steer's left hip, over the BY brand. The B's in the new brand were alike, except that the last one was somewhat blotched. That animal and ten or twelve others were then being driven to Marlin. Witness was an expert stock man, and knew that the brand BY could be easily changed into WEBB. Witness informed Bryan that he saw that animal in the herd in possession of Joe Wyers, in June, 1881.

Green Barron testified, for the State, that in April, 1881, he saw, in a herd of cattle driven by Joe Smith, Wick Reed, and others, a small white steer answering the description given by Bryan of the animal he claimed to have lost. About a month later, the witness saw the same animal on the edge of McLennan county. The BY brand had then but recently been changed to WEBB, one of the brands of the defendant. Witness never afterwards saw that animal.

Bud Smith testified, for the State, that he was one of the parties who, in April, 1881, on Brushy creek, in Falls county, Texas, gathered the neighborhood cattle into a herd. Defendant and the witnesses, Joe Smith and Green Barron, were members of the party. One of the animals in that herd, in age, color, brand and mark, corresponded exactly with the description subsequently given by the witness Bryan of an animal he claimed to have lost. Witness did not know at what point that animal joined the herd, but remembered that the herd was driven through Bryan's neighborhood. Witness cut his cattle out of the herd at the Barron place, leaving the BY animal in the herd. "WEBB" was, at that time, one of the defendant's several brands. Witness had never seen that animal since.

Jeff Parton testified, for the State, that he lived near the witness Bryan in 1881, and knew his few head of cattle well. He knew the animal in question, which he described exactly as

Bryan did. He had never seen that animal since Bryan missed it from the range about his house.

H. Rinkelman testified, for the State, that on the twenty-fourth day of June, 1881, he purchased a bunch of thirteen head of cattle from the defendant, which bunch included two animals branded WEBB, one being a white cow, six years old, and the other a white steer. The said steer was marked with a crop off the left ear and a swallow fork in the right ear. Those animals were inspected for witness by cattle inspector Bartow, were conveyed to witness by the defendant by bill of sale, and were shipped by witness to market. The bill of sale was written by the witness's clerk, McMillen, the defendant giving him the description of the animals. Witness did not examine the animals to ascertain whether or not they corresponded with the description given in the bill of sale. He did not examine the brands, and could not say whether any of the cattle had been recently branded. The bill of sale from defendant to witness described a white steer, three years old, branded WEBB, and marked a crop off the left, and an underslope in the right ear.

Hide and cattle inspector Bartow testified, for the State, that he inspected thirteen head of cattle on June 24, 1881, purchased by H. Rinkelman from the defendant. It was then the practice of the witness to report the inspection to the purchaser, and afterwards make the entry on his records from the bill of sale executed by the seller to the purchaser. Witness inspected the thirteen head of cattle described, upon the description of the defendant, which was correct as to color, marks and brands. Witness could not say that the ages of the several animals were correctly reported by defendant. He had no recollection of the brands on the said animals beyond his record. Mr. Bryan called at witness's office, to inspect his books, some time in June, 1881, after the cattle described were inspected. Witness could remember nothing said by Bryan on that occasion except that, if the white WEBB steer, as stated in the bill of sale, was three years old, it was not his animal. Witness could not swear that his record contained the correct ages of the cattle. He was not an expert stock man, and his inspections had some times proved incorrect. The witness's record recited, among others, the inspection, on July 24, 1881, for H. Rinkelman, as being purchased from defendant, "one white steer, three years old, branded WEBB, and marked crop off the left, and underslope in the right ear." The State closed.

Tom Grammer was the first witness for the defense. He testified that the defendant bought the WEBB brand of cattle from Carter & Graves, in December, 1880. Among the animals so purchased by him was a three year old white steer with red spots or specks about the head and neck, and ears between red and black in color. The brand—WEBB—was on the left hip, and was an old brand, and the only brand on the animal. The last B was some what blotched. Witness first observed that animal in a herd in the charge of himself, Frank Powers, Jack Grammer, Dunlap, and others, near Eatontown, in Limestone county. The witness drove that animal with the herd to Brushy creek, and sent word to the defendant that he had done so. He did not remember the mark on the animal. Witness was an old stock man, and knew that the steer described was three years old in 1881.

Tom Gross testified, for the defense, that he saw a white steer with red spots about its neck and head in a drove of ten or fifteen head of cattle, which defendant drove to Marlin in June, 1881. That steer was past three years old, was branded WEBB on the left hip, and belonged to the defendant. Witness had often seen it about the premises of old lady Wyers, and knew that it belonged to the defendant. The brand on the animal was an old one, and was the only brand on it. Witness was in Marlin on the day the cattle were driven there by defendant. He saw the same bunch of cattle with which defendant started from home, in Rinkelman's pens at Wright's gin, but did not remember seeing that particular steer in the pens. Defendant bought the WEBB brand of cattle from Carter & Graves.

D. H. Ray testified, for the defense, that the defendant bought the WEBB brand of cattle from Carter & Graves. Witness knew that among the animals so purchased was a white three year old steer, with a black or red spotted head and neck, and colored ears. The brand was on the left hip, and was an old one. Defendant drove several head of his own and three head of witness's cattle to Marlin, in June, 1881, and sold them to Rinkelman. For the three sold for him, witness executed his bill of sale to Rinkelman. Witness denied that he ever proposed to Bryan to pay for this steer, provided the prosecution was abandoned. If he did make such a proposition to Bryan, and had forgotten it, he made it of his own volition, and not with the authority of the defendant.

Cross-examined, witness said that he did not see the bunch of

cattle started to Marlin when they were sold to Rinkelman, but he saw them in the pen at Mrs. Wyers's place. He observed the white steer closely, but was unable to describe any other animal in the bunch. This was the only WEBB animal the witness had ever seen on the range.

W. A. Graves testified, for the defense, that, acting for himself and his partner Carter, he sold the defendant, among others, the WEBB brand of cattle, taking in payment a brand of cattle owned by defendant in Jones county. Witness did not remember the date of that transaction. He did not know the mark of the WEBB brand. He did not know how many, if any, cattle there were on the range in the WEBB brand. He bought the brand from a man named Webb, and had no recollection of ever having seen any cattle in the brand.

The bill of sale was next introduced in evidence. It was signed by W. A. Graves, was dated December 27, 1880, and conveyed to the defendant the animals in several marks and brands, among them the WEBB brand, and its accompanying mark— crop and underbit in the left, and overbit in the right ear. The defense closed.

S. B. Bryan, recalled by the State, testified, in rebuttal, that the witness D. H. Ray called at his house on Sunday after this prosecution was instituted, and offered witness fifteen dollars for the animal he had lost. Witness declined the offer and Ray left.

H. Rinkelman, recalled by the State, testified, in rebuttal, that he purchased only the thirteen head of cattle mentioned in his testimony in chief from the defendant, during the summer of 1881. None of those cattle belonged to D. H. Ray. Witness bought no cattle from Ray, paid him no money, and received no bill of sale from Ray during the summer of 1881.

The motion for new trial raised the question discussed in the opinion.

*Oltorf & Harlan,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WILLSON, JUDGE. It is shown by the record that the honorable Anson Rainey, judge of the fortieth judicial district, before whom the trial of this case was had, was presiding in exchange with the honorable Eugene Williams, judge of the district in

which the county of Falls is embraced. This recital in the record sufficiently shows lawful authority in the presiding judge to hear and determine the cause. It was not necessary, in such case, to make and enter a formal order declaring the exchange of districts by the judges.

Defendant requested the court to charge the jury as follows: "An unrecorded brand is no evidence of ownership, and as the brand of S. B. Bryan has not been recorded, it will be no evidence of ownership in Bryan to the steer in controversy; and unless such steer has been proven by other evidence, beyond a reasonable doubt, to be the property of Bryan, you will acquit." This requested instruction was refused. The law is unquestionably as stated in said instruction, and the evidence demands that it should be given. (Coffelt v. The State, 19 Texas Ct. App., 436.)

Other questions presented in the record are not discussed, because in our opinion the only material error in the conviction is the one above stated, and for this error the judgment is reversed and the cause remanded.

*Reversed and remanded.*